UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Eugene F. Brigham, Individually and as Trustee of the Eugene F. Brigham Trust, the Katherine L. Brigham Special Trust and the Laura H. Brigham Special Trust, and on Behalf of All Others Similarly Situated,<br><br>         Plaintiffs,<br><br>     v.<br><br>Royal Bank of Canada, RBC Dain Rauscher Inc., and RBC Capital Markets Corporation,<br><br>         Defendants. | Civil Action No.<br>08-CV-4431 (WHP) |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
LEAD PLAINTIFF'S MOTION TO PARTIALLY
<u>LIFT THE PSLRA DISCOVERY STAY</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL BACKGROUND......................................................................................... 2

I.     Regulatory Investigations and Settlements....................................................... 2

II.    Plaintiff's Complaint and Motion ..................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.     PLAINTIFF WILL NOT SUFFER UNDUE PREJUDICE WITHOUT THE
REQUESTED DISCOVERY ............................................................................ 5

     A.     An Inability To Plan a Litigation Strategy or Discover New Claims Is Not
Undue Prejudice................................................................................. 5

     B.     Plaintiffs Have Not Offered Any Reason Why the Delay in Obtaining
Discovery Will Cause Them Undue Prejudice ...................................... 8

     C.     Authorities Relied Upon By Plaintiff Are Inapposite.......................... 10

II.    PLAINTIFF'S REQUEST IS NOT SUFFICIENTLY PARTICULARIZED ................ 14

     A.     The Requested Discovery Is Overbroad and Largely Irrelevant to the
Claims That Remain ...................................................................... 14

     B.     The Discovery Cannot Be Particularized Because There Is No Operative
Complaint....................................................................................... 16

     C.     Plaintiff Seeks Much More Than Documents That Actually Were
Produced to Regulators ................................................................ 17

III.    THE BURDEN ON DEFENDANTS IS IRRELEVANT, BUT IN ANY EVENT,
LIFTING THE STAY WOULD IMPOSE A SUBSTANTIAL BURDEN.................... 18

CONCLUSION.................................................................................................................... 19

**CASES**

*380544 Canada, Inc. v. Aspen Tech.*, No. 07 Civ. 1204, 2007 U.S. Dist. LEXIS 51920 (JFK) (S.D.N.Y. Jul. 18, 2007) ........................................................... 6, 13

*Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384 (S.D.N.Y. 2001) ......................... 14

*In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103 (C.D. Cal. 2007) ........................................ 14

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575, 2003 U.S. Dist. LEXIS 12846 (SWK) (S.D.N.Y. July 25, 2003) ...................................................... 7, 12

*In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160 (C.D. Cal. 2008) ........................................................................................................................... 17

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 2007 U.S. Dist. LEXIS 10408 (E.D. Mich. Feb. 15, 2007) ....................................................................... 10, 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2002 U.S. Dist. LEXIS 26261 (S.D. Tex. Aug. 16, 2002) ....................................................................................... 10

*In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37 (D.D.C. 2005) ............................................. 14

*In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286 (S.D.N.Y. 2002)) ........................... 6

*In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178 (S.D.N.Y. 2004) ........................................ 12

*In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100 (D. Mass. 2002) ............................ 12

*In re Metro. Sec. Litig.*, 2005 U.S. Dist. LEXIS 46033 (E.D. Wash. Mar. 31, 2005) ................................................................................................................ 10, 11, 12

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208, 2006 U.S. Dist. LEXIS 20758 (RO) (S.D.N.Y. Apr. 14, 2006) ............................................ 9

*In re Mutual Funds Inv. Litig.*, 2005 U.S. Dist. LEXIS 3469 (D. Md. Mar. 7, 2005) ........................................................................................................................... 11

*In re Refco, Inc. Sec. Litig.*, No. 08 Civ. 8626, 2006 U.S. Dist. LEXIS 55639 (GEL) (S.D.N.Y. Aug. 8, 2006)) .............................................................................. 6, 7, 12

*In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004)) .............. 10, 11, 12

*In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2006 U.S. Dist. LEXIS 42646 (WHP) (S.D.N.Y. June 26, 2006) ......................................................... passim

*In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2007 U.S. Dist. LEXIS 70828, (WHP) (S.D.N.Y. Sept. 26, 2007) ................................................................ 9

*In re Tyco Int'l, Ltd. Multidistrict Litig.*, 2003 WL 23830479 (D.N.H. Jan. 29, 2003) ........................................................................................................................... 11

*In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967 (LMM) (S.D.N.Y. Nov. 21, 2008)) .................................................................................................................. 2, 7, 8

*In re Vivendi Universal S.A. Sec. Litig.*, 381 F. Supp. 2d 129 (S.D.N.Y. 2003) ................. 10, 14

*In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ...................... 10, 11, 12

*Kelleher v. ADVO, Inc.*, No. 06 Civ. 01422, 2007 WL 1232177 (AVC) (D. Conn. April 24, 2007) .................................................................................................................. 7

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001) .................................. 5

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976). ....................................... 9

*Rampersand v. Deutsche Bank Sec. Inc.*, 381 F. Supp. 2d 131 (S.D.N.Y. 2003) ......................... 7

*Seippel v. Sidley, Austin, Brown & Wood LLP*, 2005 U.S. Dist. LEXIS 2388 (SAS) (S.D.N.Y. Feb. 17, 2005) ............................................................................................. 12

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116 (2d Cir. 2003) .................................................................................................................................. 5

*Waldman v. Wachovia Corp.*, 2009 U.S. Dist. LEXIS 1988 (SAS) (S.D.N.Y. Jan. 12, 2009) ..................................................................................................................................... 12

## STATUTES

15 U.S.C. § 78u-4(b)(3)(B) ............................................................................................................ 5

N.Y. Gen. Bus. L. § 352(2) ........................................................................................................... 15

Securities Exchange Act of 1934, § 21(b). ................................................................................... 15

Defendants Royal Bank of Canada and RBC Capital Markets Corporation ("RBCCM" and, together with Royal Bank of Canada, "RBC")[1] respectfully submit this memorandum of law in opposition to the Lead Plaintiff's Motion To Partially Lift The PSLRA Discovery Stay.

## PRELIMINARY STATEMENT

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), discovery in this case is *automatically stayed* pending a ruling on any motion to dismiss. Under the statute, Plaintiff bears a heavy burden to lift the stay, requiring him to demonstrate that the discovery he seeks is "particularized" *and* that the stay is causing him "undue prejudice." Plaintiff falls well short of meeting his burden, and the stay of discovery should remain in place.

Plaintiff claims that undue prejudice exists because, without the discovery, he will have to decide whether to continue prosecuting this action without knowing how much merit his potential claims have. If that were enough to satisfy Plaintiff's burden of demonstrating undue prejudice, the PSLRA automatic discovery stay provisions will be rendered meaningless. A plaintiff can *always* argue that the lack of internal company documents is prejudicing his ability to assess what potential claims to assert in an amended complaint. Moreover, Plaintiff utterly fails to address the critical issue of how he will be unduly prejudiced by having to wait for the discovery until after a motion to dismiss is decided.

Plaintiff's motion represents the quintessential "fishing expedition" that the PSLRA discovery stay was designed to prevent. This was clear from Plaintiff's insistence that this motion be decided *before* he filed an amended complaint in this action, and the admission of Plaintiff's counsel that the purpose of the discovery is to evaluate whether the claim he originally

---

[1]     Defendant RBC Capital Markets Corporation was previously known as RBC Dain Rauscher Inc. A different entity, also named RBC Capital Markets Corporation, merged into RBC Dain Rauscher Inc. The combined entity was renamed RBC Capital Markets Corporation simultaneous with the closing of the merger and began operations on Monday, March 3, 2008.

filed still has merit, or whether two new theories of liability he has developed can be supported. *See* Tr. of Jan. 30, 2009 Hrg., at 3-5, 16-17 (Declaration Of Aaron M. Sheanin In Support Of Lead Plaintiff's Motion To Partially Lift The PSLRA Discovery Stay, dated Feb. 13, 2009 (the "Sheanin Decl."), Ex. 5).

Additionally, Plaintiff's only attempt to show particularization of his request is his characterization of the requests as "clearly defined" and "sufficiently discrete." Motion, at 7-8. This is not enough to meet Plaintiff's burden under the PSLRA because there has been no showing that these documents bear any relevance to what claims remain in this case after a related regulatory settlement.

This Court should follow the recent decision in a similar auction rate class action filed against UBS. *See* Order, *In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967 (LMM) (S.D.N.Y. Nov. 21, 2008). There, Judge McKenna denied a motion to lift the discovery stay under nearly identical circumstances, holding that the plaintiffs had failed to meet their heavy burden of demonstrating that the discovery they sought was necessary to prevent undue prejudice. *Id.* at 1. Judge McKenna's decision is well supported by caselaw in this district.

## PROCEDURAL BACKGROUND

### I.     REGULATORY INVESTIGATIONS AND SETTLEMENTS

In or around April 2008, the SEC and other regulators, including state securities regulators, began investigations into the circumstances surrounding the widespread auction failures in February 2008 (the "ARS Investigations"). *See* Sheanin Decl., Ex. 1. After other firms had entered into settlements-in-principle in order to resolve these regulatory investigations, RBCCM entered into settlements-in-principle with the SEC and a number of state securities regulators on or around October 8, 2008. *See* Sheanin Decl., Exs. 2-4.

In connection with the settlements-in-principle — the general terms of which are public — RBCCM agreed to offer to repurchase over $850 million in ARS from retail investors who purchased ARS from RBCCM. *Id.* Retail investors were defined to include individual investors; small businesses with account values up to $10 million; and nonprofit, charitable, and religious organizations with account values up to $25 million. *Id.* RBCCM also agreed, among other things, to fully reimburse any eligible investors who had sold their ARS at a loss following the auction failures, and to participate in a special arbitration process to be established by the Financial Industry Regulatory Authority. *Id.* Lead Counsel acknowledges that this is a "fairly comprehensive resolution" that "raises the question . . . [whether this case should] continue at all, or not." *See* Tr. of Jan. 30, 2009 Hrg., at 3-4 (Sheanin Decl., Ex. 5). Following the "fairly comprehensive" regulatory resolution, Lead Counsel suggests that there are two types of viable claims left: (1) claims based on a theory that broker-dealers' "interventions . . . had the impact of depressing the rates of interest that were paid" before mid-February 2008, and (2) claims on behalf of investors who bought ARS not from RBCCM but from "downstream sellers" such as E*Trade. *See id.*, at 4.

As of March 6, 2009, eligible investors holding approximately 83% of the total eligible ARS have accepted RBCCM's offer to repurchase, resulting in the repurchase of approximately $724 million worth of ARS. *See* Declaration Of Joshua R. Pater, dated March 13, 2009 (the "Pater Decl."), ¶ 4. Plaintiff Eugene Brigham has not accepted RBCCM's offer to repurchase his ARS, but he is eligible to do so at any time before June 30, 2009, when the offer will expire. *See Id.*, ¶ 5.

## II.    PLAINTIFF'S COMPLAINT AND MOTION

Plaintiff filed this action on May 12, 2008, one of many filed by Lead Counsel against firms involved in the ARS market.  The Complaint was filed on behalf of a purported class of "all persons and entities who purchased auction rate securities from RBC" in a given period and who held them as of February 13, 2008.  Compl., ¶ 13.

The Complaint alleges that RBC knew, but failed to disclose to its customers, certain material facts about ARS, including that ARS "were only liquid at the time of sale because RBC and other broker-dealers . . . were artificially supporting and manipulating the market to maintain the appearance of liquidity and stability," and that, "without this manipulation of the auction market, many auctions likely would have failed . . . ." *Id.*, ¶¶ 34-35.  The Complaint alleges that RBC's actions caused economic loss to the investors, whose ARS "have become illiquid." *Id.*, ¶ 44.  The Complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, as well as Section 20(a) of the Securities Exchange Act.

On October 16, 2008, the Court appointed Eugene F. Brigham as Lead Plaintiff.  On November 11, 2008, the Court appointed Girard Gibbs LLP as Lead Counsel.

On February 13, 2009, Plaintiff filed the motion, seeking a partial lift of the PSLRA stay on discovery.  The motion seeks the following three categories of documents and information:

- all documents and materials that "RBC produced or provided" in connection with the ARS Investigations;

- all documents and materials that "RBC was obligated to produce or provide" in connection with the ARS Investigations; and

- transcripts of all depositions and interviews of all present and former RBC employees taken in connection with the ARS Investigations.

Motion, at 7; *see also* [Proposed] Order Granting Lead Plaintiff's Motion To Partially Lift The PSLRA Discovery Stay.

<u>**ARGUMENT**</u>

The PSLRA stays discovery pending the resolution of a contemplated motion to dismiss.

*See* 15 U.S.C. § 78u-4(b)(3)(B). The stay can be lifted only if this Court finds that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice" to Plaintiff. *Id.* Plaintiff does not argue that discovery is required in order to preserve evidence. Accordingly, the question for the Court is whether Plaintiff has both shown a risk of undue prejudice and has made particularized requests. Plaintiff has not done either, and the Court should deny the motion.

## I. PLAINTIFF WILL NOT SUFFER UNDUE PREJUDICE WITHOUT THE REQUESTED DISCOVERY

### A. An Inability To Plan a Litigation Strategy or Discover New Claims Is Not Undue Prejudice

The Second Circuit has briefly explained Congress' reasons for enacting the PSLRA discovery stay:

> Congress had enacted the PSLRA to filter out potential strike suits. Instrumental to achieving this objective was imposition of more stringent pleading requirements and mandatory discovery stays for securities fraud class actions filed in federal court. The PSLRA afforded district courts the opportunity in the early stages of litigation to make an initial assessment of the legal sufficiency of any claims before defendants were forced to incur considerable legal fees or, worse, settle claims regardless of their merit in order to avoid the risk of expensive, protracted securities litigation. *Id.* (citing H.R. Conf. Rep. No. 104-369 (1995)).

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 122-23 (2d Cir. 2003);

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001) (Congress enacted in the PLSRA "a mandatory stay of discovery so that district courts could *first* determine the legal sufficiency of the claims in all securities class actions") (emphasis added).

Plaintiff's purported need for lifting the PSLRA discovery stay is based on his intent to use the documents he is seeking to plan his litigation strategy in this action. As Plaintiff's motion states:

> Lead Plaintiff now *must evaluate whether to continue to pursue this case* or to seek an early resolution. Lead Plaintiff wishes to make these decisions with the benefit of the information already turned over [by RBC] to the Regulators . . . .

Motion, at 10 (emphasis added). This was underscored at the pre-motion conference before this Court, where Plaintiff's counsel stated need for the discovery was to "evaluate whether the case even needs to proceed or not and on what terms." *See* Tr. of Jan. 30, 2009 Hrg., at 7 (Sheanin Decl., Ex. 5). At the same hearing, Plaintiff's counsel also articulated two other theories of liability not covered in the original Complaint, which he apparently wants to explore using documents produced by Defendants to the regulatory agencies. *Id.*, at 4-5.

Plaintiff's stated goal of being better able to plan his litigation strategy or to assess whether his theories of liability have merit is not "undue prejudice" under the PSLRA. As courts have routinely stated, "[t]he mere fact that the discovery stay will prevent Plaintiffs from collecting evidence to assist in potential settlement negotiations or plan their litigation strategy does not constitute undue prejudice." *380544 Canada, Inc. v. Aspen Tech.*, No. 07 Civ. 1204, 2007 U.S. Dist. LEXIS 51920, at *13 (JFK) (S.D.N.Y. Jul. 18, 2007) (citing *In re Refco, Inc. Sec. Litig.*, No. 08 Civ. 8626, 2006 U.S. Dist. LEXIS 55639, at *6 (GEL) (S.D.N.Y. Aug. 8, 2006)). "Undue prejudice does not arise from a delay in the gathering of evidence or the development of settlement or litigation postures . . . because delay is an inherent part of every stay of discovery required by the PSLRA." *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2006 U.S. Dist. LEXIS 42646, at *4-5 (WHP) (S.D.N.Y. June 26, 2006) (citing *In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002)); *see also Kelleher v.*

*ADVO, Inc.*, No. 06 Civ. 01422, 2007 WL 1232177, at *4 (AVC) (D. Conn. April 24, 2007) (rejecting request to lift the PSLRA stay for documents produced in a related litigation, noting that "[w]hile [plaintiff's] desire to begin discovery to better craft an amended complaint and plan his case is understandable, the frustration of that desire is neither improper nor unfair, but rather a routine matter of federal securities law.").

This result does not change merely because the discovery being sought was produced to regulators in a related investigation. The prevailing view in the Southern District of New York is that these circumstances do not lead to undue prejudice, as the following cases demonstrate:

- *In re Smith Barney*, *supra*, 2006 U.S. Dist. LEXIS 42646, at *5, which denied a motion to lift the PSLRA stay for documents produced to the SEC, documents reflecting the terms of defendants' settlement with the SEC, and documents relevant to plaintiffs' claims, noting that plaintiffs had not identified any "exceptional circumstances";

- *In re Refco*, *supra*, 2006 U.S. Dist. LEXIS 55639, at *2-3, which denied a motion to lift the PSLRA stay for documents produced by defendants and certain nonparties to the SEC, United States Attorney's Office, bankruptcy Examiner, or others investigating the downfall of Refco;

- *Rampersand v. Deutsche Bank Sec. Inc.*, 381 F. Supp. 2d 131, 133 (S.D.N.Y. 2003), which rejected plaintiff's argument that "the PSLRA stay of discovery does not apply when the information sought has already been provided to a governmental agency"; and

- *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. 02 Civ. 5575, 2003 U.S. Dist. LEXIS 12846, at *5 (SWK) (S.D.N.Y. July 25, 2003), which denied a motion to lift the PSLRA stay for documents produced to the SEC or other governmental agencies, noting that it could not be assured that plaintiffs would not seek to use such discovery to amend the complaint.

Additionally, *In re UBS Auction Rate Sec. Litig.*, No. 08 Civ. 2967 (LMM) (S.D.N.Y. Nov. 21, 2008)), is directly on point. There, Judge McKenna refused to lift the discovery stay in an auction rate class action where the discovery sought was documents produced by the UBS defendants to the regulators. *Id.* Plaintiff attempts to distinguish the holding by arguing that

Judge McKenna denied the motion to lift the PSLRA stay because he "*presumably* preferred to decide the motions [to dismiss] before any discovery occurred." Motion, at 11 n.1 (emphasis added). In fact, Judge McKenna made his reasoning clear: after considering the text of the PSLRA, the Court left the automatic discovery stay in place because the "plaintiffs have not shown at this time that the discovery they seek is necessary to preserve evidence or to prevent undue prejudice to them." *In re UBS*, *supra*, at 1. The same is true here.[2]

### B. Plaintiffs Have Not Offered Any Reason Why the Delay in Obtaining Discovery Will Cause Them Undue Prejudice

Plaintiff has not articulated a remotely credible theory under which he would suffer any prejudice — much less undue prejudice — as a result of having to wait for the discovery he seeks. That is, even if one accepts that he will suffer prejudice by not having access to the documents produced to the regulators, that does not address the issue of whether the *delay* in obtaining those documents will result in some substantial prejudice. That is the critical issue for the Court to decide on this motion, and Plaintiff is silent on that point.

Plaintiff cannot demonstrate any undue prejudice from a short delay in this case. Defendants remain willing to promptly move forward with a motion to dismiss the Complaint for failure to state a cause of action.[3] That motion can be resolved in a matter of months, and

---

[2] If anything, discovery was *more* appropriate in the *UBS* action because there an amended complaint already had been filed. Therefore, the discovery sought was less likely to be a "fishing expedition," unlike here where Plaintiff has not filed an operative complaint and has stated his intent to assess whether he has any viable claims.

[3] Plaintiff has refused Defendants' offer, presumably because he wants the documents produced to the regulators first in order to support an amended complaint.

Plaintiff cannot credibly argue that this short delay in obtaining discovery will put him at some material disadvantage.[4]

Moreover, even if one leaves aside the critical issue of whether the delay in obtaining the documents is highly prejudicial to Plaintiff, his theory of prejudice makes no sense. That is, Plaintiff says he needs the documents produced to the regulators to assess whether to continue the case in light of the regulatory settlements. However, the general terms of the Defendants' regulatory settlements are public, and those terms are the only information Plaintiff needs to assess whether he has damages that were not redressed by the settlements. Plaintiff makes conclusory statements that the documents he seeks will somehow inform an assessment of how the settlement affects this litigation, but there is no support for this argument. In fact, the claimed utility of the documents to Plaintiff is highly suspect given that he does not even know what types of documents were produced to the regulators.

A more credible motivation for seeking the early discovery is Plaintiff's professed need for the documents in order to assess whether other claims exist which he has *not* asserted in the Complaint. That is the paradigmatic fishing expedition the PSLRA discovery stay was designed

---

[4]     Plaintiff suggests that a regulatory settlement creates some presumption that related civil claims will survive a motion to dismiss. This is wrong on a number of grounds. First, untested assertions by regulators in administrative proceedings are entitled to little weight. *In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03 Civ. 8208, 2006 U.S. Dist. LEXIS 20758, at *19-20 (RO) (S.D.N.Y. Apr. 14, 2006) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893-94 (2d Cir. 1976)). Second, related civil claims are often dismissed on a Rule 12(b)(6) motion even where there was a regulatory settlement based on the same conduct. *See, e.g.*, *In re Smith Barney*, *supra*, 2006 U.S. Dist. LEXIS 42646, at *1 (noting SEC settlement for $208 million); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583, 2007 U.S. Dist. LEXIS 70828, at *6-9 (WHP) (S.D.N.Y. Sept. 26, 2007) (dismissing Section 10(b), Rule 10b-5, and Section 20(a) claims with prejudice following the related SEC settlement). Finally, the regulatory settlements at issue here offer no support for the validity of Plaintiff's claims. To the contrary, according to Plaintiff's counsel, the settlements raise the question of whether there are any claims left for Plaintiff to pursue. *See* Tr. of Jan. 30, 2009 Hrg., at 7 (Sheanin Decl., Ex. 5) (Plaintiff's counsel stating: "The settlement raises the question, obviously, from our perspective of where do we go from here. Do we really need this case. Should it continue at all, or not.").

to prevent.  As Plaintiff's counsel conceded, the specific intention of the PSLRA is "to prevent a plaintiff from using discovery . . . to try to discover some new claim that they didn't have when they started the case."  *See* Tr. of Jan. 30, 2009 Hrg., at 7 (Sheanin Decl., Ex. 5).  Nor can that be enough to establish undue prejudice, as that same disadvantage would befall *every* securities plaintiff seeking early discovery.

## C.    Authorities Relied Upon By Plaintiff Are Inapposite

In support of his motion, Plaintiff cites cases from other Circuits where undue prejudice was found to exist.  However, these cases are entirely inapposite.

First, many of the cases relied upon by Plaintiff arose in the bankruptcy context.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 2002 U.S. Dist. LEXIS 26261 (S.D. Tex. Aug. 16, 2002); *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002) (noting the "very real risk that [plaintiff] will be left to pursue its action against defendants who no longer have anything or at least as much to offer"); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 2007 U.S. Dist. LEXIS 10408 (E.D. Mich. Feb. 15, 2007) ("It was precisely because the defendants in *Enron* and *WorldCom* were bankrupt and subject to other civil lawsuits that a partial lifting of the PSLRA stay was necessary . . . ."); *In re Metro. Sec. Litig.*, 2005 U.S. Dist. LEXIS 46033, at *9 (E.D. Wash. Mar. 31, 2005); *see also In re Vivendi Universal S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130-31 (S.D.N.Y. 2003) (denying motion to lift stay where there was "no evidence that plaintiffs face the same prospect . . . that they would be left without remedy in light of settlement discussions or other intervening events, such as bankruptcy"); *In re Smith Barney*, *supra*, 2006 U.S. Dist. LEXIS 42646, at *2 (distinguishing *In re WorldCom* and *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246 (D. Md. 2004)).

Cases where the automatic discovery stay was found to lead to undue prejudice in the bankruptcy context are easily distinguished.  A plaintiff seeking recovery from an insolvent

defendant, against whom others also are seeking recovery, potentially faces an undue prejudice from the very real risk that there will be no assets remaining to satisfy even meritorious claims. Here, in contrast, Plaintiff does not — and cannot — argue that Royal Bank of Canada or its subsidiaries are at risk of becoming insolvent.[5] Accordingly, the logic of such decisions does not apply.

In addition to the bankruptcy proceedings, many of the cases on which Plaintiff relies turned on the fact that other criminal and civil proceedings were "moving apace," and as a result, the PSLRA plaintiffs were at risk of falling behind such other proceedings. *See In re WorldCom*, *supra*, 234 F. Supp. 2d at 305-06 (ordering production in light of the "unique circumstances" that the securities plaintiffs were about to join court-ordered coordinated settlement discussions with ERISA plaintiffs, who were already in possession of the documents, in a separate case that was "moving apace" against defendants "who [would] no longer have anything or at least as much to offer"); *In re Royal Ahold*, *supra*, 220 F.R.D. at 251-52 (D. Md. 2004) (noting the risk of prejudice to securities plaintiffs, "particularly if [the securities and ERISA plaintiffs] proceed quickly to settlement negotiations, as the court has urged them to do"); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 2003 WL 23830479, at *4 (D.N.H. Jan. 29, 2003) (noting the pending ERISA and derivative litigations, and lifting the PSLRA stay in order to "plac[e] all potential claimants on an equal footing"); *In re Metro.*, *supra*, 2005 U.S. Dist. LEXIS 46033, at *15 ("[T]his Court has urged the parties to engage in discussions and make settlement an early priority."); *In re Mutual Funds Inv. Litig.*, 2005 U.S. Dist. LEXIS 3469, at *1 (D. Md. Mar. 7, 2005) (finding discovery appropriate due to "the regulatory settlement process that is now underway as to many of the Fund defendants"); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d

---

[5]     Royal Bank of Canada announced first quarter results on February 26, 2009, reporting net income of CAD$ 1.053 billion. *See* http://www.rbc.com/investorrelations/pdf/q109release.pdf.

178, 183 (S.D.N.Y. 2004) (lifting the stay where regulators were continuing to investigate wrongdoing); *In re Delphi*, *supra*, 2007 U.S. Dist. LEXIS 10408, at *23-24; *see also In re AOL*, *supra*, 2003 U.S. Dist. LEXIS 12846, at *6 (distinguishing *In re WorldCom*); *In re Refco*, *supra*, 2006 U.S. Dist. LEXIS 55639, at *9 (same). Here, Plaintiff has not argued that he is at risk of falling behind other litigants (regulatory or otherwise) and thus these cases are inapplicable.

Other cases cited by Plaintiff are inapposite for additional reasons. *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002), only lifted the PSLRA stay as to certain defendants against whom the plaintiffs had "easily survived" motions to dismiss. Here, no motion to dismiss has yet been filed, let alone adjudicated in favor of Plaintiff. *In re Metro.*, *supra*, 2005 U.S. Dist. LEXIS 46033, at *8, 16, turned on the fact that plaintiffs already had filed a detailed amended complaint and were unlikely to be on a "fishing expedition" — unlike the instant case. *See also Seippel v. Sidley, Austin, Brown & Wood LLP*, 2005 U.S. Dist. LEXIS 2388 (SAS) (S.D.N.Y. Feb. 17, 2005) (lifting the stay where the court already had sustained plaintiffs' state law claims). *In re Royal Ahold*, *supra*, 220 F.R.D. at 251, was based in part on the risk that, because a parent company was aggressively divesting itself of key subsidiaries, there was a "reasonable concern that documents may be lost."

The case on which Plaintiff relies most heavily is *Waldman v. Wachovia Corp.*, 2009 U.S. Dist. LEXIS 1988 (SAS) (S.D.N.Y. Jan. 12, 2009). With all due respect, *Waldman* cannot be squared with the text and purpose of the PSLRA. In its brief discussion of the PSLRA, *Waldman* "balanc[ed] the burden to defendants against the potential prejudice to plaintiffs," and gave the following explanation for its holding:

> Given the unique procedural posture of this litigation, lead plaintiffs must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class. The unavailability of the documents

12

> plaintiffs have requested places a burden on their ability to make that
> determination.

*Id.* at *4-5. However, there is no support in the PSLRA for any such balancing approach, and the prevailing caselaw in this Circuit makes clear that any burden felt by the *Waldman* plaintiff "is an inherent part of every stay of discovery required by the PSLRA." *See In re Smith Barney*, *supra*, 2006 U.S. Dist. LEXIS 42646, at *4-5. *Waldman* also noted plaintiffs' supposedly "unusual need" for the documents, but in fact this "need" is entirely routine in the many cases in which a regulatory settlement precedes disposition of a related civil action. Furthermore, even if this court were persuaded by *Waldman*'s rationale, it still does not justify the scope of the awarded relief. If, in fact, the lead plaintiffs needed documents to determine whether to continue with their case in light the SEC settlement (like Plaintiff in this case), such a need could be met by producing nothing more than the actual settlement agreement with the SEC. There simply was no basis under the PSLRA for the broad-reaching discovery order issued against Wachovia.

Finally, Plaintiff attempts to distinguish *380544 Canada* by noting that, in that case, the defendants "had merely produced documents to, but not settled with, regulatory authorities." *See* Motion, at 12 (citing *380544 Canada*, *supra*, 2007 U.S. Dist. LEXIS 51920 at *8-11). But *380544 Canada* plainly did not turn on that fact, and Plaintiff never explains the significance of the distinction. Indeed, as noted above, many of the cases on which Plaintiff relies on here turned on the fact that settlements had not been reached — i.e., that they were "moving apace." *Supra*, at 11-12. There is simply no reason not to follow *380544 Canada* or the many other cases which have rejected Plaintiff's reading of the PSLRA.

## II.     PLAINTIFF'S REQUEST IS NOT SUFFICIENTLY PARTICULARIZED

### A.     The Requested Discovery Is Overbroad and Largely Irrelevant to the Claims That Remain

Plaintiff argues that the discovery being sought is particularized because it is "sufficiently discrete." *See* Motion, at 8.  However, to say that the discovery request is "discrete" is not to say that the requested documents are relevant to the claims that Lead Counsel now intends to bring — a fact which, by itself, supports denial of the motion to lift the stay.  *See Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001) (finding plaintiffs' request not particularized where it sought 45,000 pages, "many of [which were] not relevant to the securities fraud claim" in question); *In re Vivendi*, *supra*, 381 F. Supp. 2d at 130 (finding a request for documents already produced to the SEC and other bodies insufficiently particularized); *see also In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007) (finding a request for documents produced to regulator in parallel investigation was insufficiently particularized where "Plaintiffs ha[d] not identified specific categories or types of documents sought or how the documents sought will be relevant to the claims Plaintiffs intend to assert in this case"); *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37 (D.D.C. 2005) (finding a request insufficiently particularized where "[t]he documents produced [to regulators were] voluminous and possibly irrelevant to the claims likely to be raised" by plaintiffs).

This question of relevance is especially important given that, as Lead Counsel has conceded, any claims that might remain in this case look much different than they did when the Complaint was filed.  Indeed, Lead Counsel has stated that two types of claims remain after the regulatory settlement, but one of the two — a claim by investors who bought ARS not from RBCCM but from "downstream sellers" such as E*Trade — is not even pleaded in the Complaint.  *See* Tr. of Jan. 30, 2009 Hrg., at 4 (Sheanin Decl., Ex. 5).  The Complaint is made on

behalf of a purported class of "all persons and entities who purchased auction rate securities from RBC" in a given period and who held them as of February 13, 2008 — not on behalf of persons and entities who purchased ARS from institutions *other than* RBC.  *See* Compl., ¶ 13.  Plaintiff has not identified any cases in which the PSLRA stay was lifted so that a plaintiff could manufacture and hone entirely new claims on behalf of new plaintiffs.  This is not the law, because it is exactly this sort of gamesmanship which the PSLRA forbids.

In considering relevance, it is significant to note that the regulators to whom Defendants produced documents are entitled to a much broader scope of materials than is permitted to civil litigants under the Federal Rules of Civil Procedure.  Under Section 21(b) of the Securities Exchange Act of 1934, for example, the SEC may require "the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to [its] inquiry."  The New York state "blue sky" law, the Martin Act, similarly permits the Attorney General of the state of New York to "require the production of any books or papers which he deems relevant or material to his inquiry."  N.Y. Gen. Bus. L. § 352(2).  This is a broader standard of relevance than the standard applied to federal civil litigation, which of course is not governed by what the plaintiff "deems relevant or material."

Indeed, RBCCM produced many documents in the ARS Investigations that are not relevant to the claims that Lead Counsel asserts are remaining in this case, and which RBCCM should not be forced to turn over to Plaintiff.  For example, RBCCM produced tens of thousands of pages of documents to the SEC and to certain state securities regulators, including information regarding customers of RBCCM that fall outside Plaintiff's defined class.  *See* Pater Decl., ¶ 6.  Such information bears no relevance to the claims asserted in this case.

**B.** **The Discovery Cannot Be Particularized Because There Is No Operative Complaint**

Here, a discovery request seeking "all documents" produced by Defendants to the regulators cannot be "particularized" because neither this Court nor the Defendants can be sure what claims Plaintiff intends to assert in the proposed amended complaint. Based on the pre-motion conference, Plaintiff intends to amend his complaint whether the discovery stay is lifted or not. *See* Tr. of Jan. 30, 2009 Hrg., at 9 (Sheanin Decl., Ex. 5). Thus, there is not even an operative complaint in this case from which to assess whether the discovery sought is tailored to the claims being asserted.

Indeed, the lack of particularized discovery is particularly compelling given Lead Counsel's statement that the amended complaint "will narrow the range of issues in dispute." *Id.* at 10. As stated above, Defendants' productions in the ARS Investigations included information about customers of RBCCM that fall outside Plaintiff's defined class, and which therefore were not relevant to the original Complaint. If Plaintiff's amended pleading will be more narrowly focused, it will only increase the likelihood that the materials are not relevant to this case. Moreover, to force Defendants to produce documents to Plaintiffs before they are able to even assess whether those are even relevant to the litigation would be highly prejudicial.

Finally, Plaintiff's counsel has, in very broad terms, espoused two "other potential claims" that were not included in the original Complaint, but it is not clear if those claims will in fact be asserted in the proposed amended complaint, or what the scope of those claims will be. *Id.* a 4-5. Defendants have not established that such theories overlap with the theories advanced in the ARS Investigations, and neither the Court nor Defendants are in a position to assess that question without seeing an amended complaint. This only underscores the need for an operative complaint before assessing whether the discovery is particularized.

## C.  Plaintiff Seeks Much More Than Documents That Actually Were Produced to Regulators

In the parties' pre-motion conference before the Court, Lead Counsel stated that it intended to bring "a motion asking the court to consider allowing [Plaintiff] to obtain specifically the limited set of documents that were produced to the regulators."  Tr. of Jan. 30, 2009 Hrg., at 5 (Sheanin Decl., Ex. 5).  However, the motion in fact seeks much more than that.  It requests not only those documents that RBC "produced or provided" in connection with the ARS Investigations, but also those documents that RBC "was obligated to produce or provide" in connection with the ARS Investigations.  Motion, at 7; *see also* [Proposed] Order Granting Lead Plaintiff's Motion To Partially Lift The PSLRA Discovery Stay.  The motion should be denied on this basis alone.

The second category, which was never mentioned before the motion, and is not explained by Plaintiff, apparently is meant to cover all documents which were technically responsive to any subpoena or informal information request made in the ARS Investigations — without regard to whether they were actually produced.  As Lead Counsel no doubt is aware, regulatory investigations often proceed with the regulator issuing a number of very broad requests for documents and information, the scope of which are then negotiated down by the respondent.  Such was the case in the ARS Investigations.  *See* Pater Decl., ¶ 7.  For RBC to produce *all* documents that were technically responsive to the many requests made in the ARS Investigations would be enormously expensive.  This novel request runs afoul of the demand that requests by particularized.  *See In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1180 (C.D. Cal. 2008) (denying request to lift the PSLRA stay where, "[w]hile they suggest discovery will 'primarily include materials produced in parallel proceedings' whose production will pose a

'minimal' burden on the Defendants, Plaintiffs do not limit their document requests in line with that characterization.").

## III. THE BURDEN ON DEFENDANTS IS IRRELEVANT, BUT IN ANY EVENT, LIFTING THE STAY WOULD IMPOSE A SUBSTANTIAL BURDEN

Plaintiff argues that this Court should find an exception to the PSLRA stay because "the requested discovery imposes no particular burden on RBC." Motion at 8. However, the PSLRA standard is clear: "There is no exception to the discovery stay for cases in which discovery would not burden the defendant." *In re Smith Barney*, *supra*, 2006 U.S. Dist. LEXIS 42646, at *7. The question is whether plaintiff is unduly prejudiced by the continuance of the stay, not whether the defendant would be burdened by lifting it. *Id.* The PSLRA nowhere mentions the burden on a producing defendant as relevant to the question of whether to lift the mandatory stay.

Moreover, even if burden were a relevant consideration, Defendants will have to undergo a costly review of the regulatory document production if the discovery stay is lifted. As noted above, the materials produced to regulators in the ARS Investigations include documents that Defendants believe are wholly irrelevant to this matter. Moreover, many of the documents contain sensitive confidential information relating to customer trading accounts that Defendants would not turn over unless it was clear those materials were relevant. If the discovery stay is lifted, Defendants would have to review the regulatory production to segregate relevant documents from non-relevant materials before producing them to Plaintiffs. If there were disputes over relevance, additional motion practice would ensue. All of this would be burdensome, and completely unnecessary if Defendants' motion to dismiss is successful.

## CONCLUSION

Plaintiff has failed to demonstrate undue prejudice if the motion is not granted, and he has failed to make particularized discovery requests. Accordingly, the motion should be denied in its entirety.

Dated:    March 13, 2009
            New York, New York

                              **MILBANK, TWEED, HADLEY & McCLOY LLP**

                By:   /s/ Sean M. Murphy
                Sean M. Murphy (SM 8717)
                George S. Canellos (GC 8092)
                Joshua R. Pater (JP 1302)
                One Chase Manhattan Plaza
                New York, NY  10005
                Telephone:        (212) 530-5000
                Facsimile:         (212) 822-5219
                Email:        smurphy@milbank.com

                *Attorneys for Defendants Royal Bank of Canada, RBC Dain Rauscher Inc., and RBC Capital Markets Corporation*